1
2
3
4
5

**THE DISTRICT COURT OF GUAM**

6

| | |
|---|---|
| IOSUA MASEN, | CIVIL CASE NO. 22-00026 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT WITH PREJUDICE** |
| CHUBB INSURANCE HONG KONG LIMITED, | |
| Defendant. | |

7
8
9
10
11
12

Before the court is Defendant Chubb Insurance Hong Kong Limited's ("Chubb") Motion

13

for Summary Judgment. Mot., ECF No. 35. The court has reviewed the record, pleadings, and

14

relevant law, and deems this matter suitable for submission without oral argument.

15

The court hereby **GRANTS** Chubb's Motion with prejudice.

16

**I.    Background**

17

On May 10, 2022, Plaintiff Iosua Masen was hit by a freightliner tractor trailer

18

("freightliner") and suffered injuries which resulted in the Plaintiff becoming a quadriplegic.

19

Am. Compl. at 3, ECF No. 15. The freightliner was owned by Consolidated Transportation

20

Services, Inc. dba CTSI Logistics Guam ("CTSI"), and was driven by a CTSI employee, Tyrone

21

Elliott Oates, during the scope of his employment. *Id.*

22

At the time of the accident, CTSI was insured by three separate policies:

23
24

1. A "Motor Car" policy providing $5,000,000.00 in coverage from Century Insurance Company (Guam) Limited. Ex. A at 5-46, ECF No. 37.

2. A "General Liability" policy, which included an "Excess Motor Liability Extension" that provided an additional $4,000,000.00 in coverage from Century (collectively, the "Two Century Policies"). Ex. B at 49-88, ECF No. 37.

3. A "Multimodal Freight Liability Insurance" from Chubb, which covered the period between July 15, 2021, to July 14, 2022 (the "Chubb Policy"). Ex. C. at 90-120, ECF No. 37. In pertinent part, the Third Party Liability Extension provision of the Chubb Policy provides that it will cover up to $1,000,000.00 per "Occurrence" in certain circumstances.[1] *Id.* at 117. However, in this case, the Third Party Liability Extension does not provide coverage up to $1,000,000.00 per "Occurrence" because CTSI's services are in Guam, which is subject to a $250,000.00 sub-limit of coverage per "Occurrence" under Item 18(3) of the Policy Schedule.[2] *Id.* at 93.

---

[1] The Third Party Liability Extension provides the following:

> Notwithstanding Exclusion 6.5 **Bodily Injury** and Exclusion 6.19 **Leased or Hired Property**, **Chubb** will pay up to USD1,000,000 each **Occurrence** for loss arising from a legal liability incurred by the **Insured** solely as a result of a failure occurring during the **Period of Insurance**, on the part of the **Insured** or the **Insured's** servants or agents, to exercise reasonable care and skill in the normal course of the **Insured Services** and operations, resulting in:
>
> 1. Physical loss of or damage to the property of a third-party occurring during the **Period of Insurance**;
>
> 2. Death of, or **Bodily Injury** to, a third party occurring during the **Period of Insurance**.

Ex. C at 117, ECF No. 37 (emphasis in original).

[2] Item 18(3) of the Policy Schedule refers to the "Additional Extensions" provided by the Chubb Policy, which includes the Third Party Liability Extension. *Id.* at 93.

On February 28, 2023, the Plaintiff filed a First Amended Complaint against CTSI, Mr. Oates, Century, and Chubb.[3] Am. Compl., ECF No. 15. The First Amended Complaint alleged three claims: (1) a personal injury claim against CTSI and Mr. Oates; (2) a claim against Century to recover under the Two Century Policies pursuant to Guam's direct action statute, 22 GUAM CODE ANN. § 18305[4]; and (3) a claim against Chubb to recover under the Chubb Policy pursuant to Guam's direct action statute, 22 GUAM CODE ANN. § 18305. *Id.* at 5-7.

On July 11, 2023, CTSI, Century, and Mr. Oates (the "Settling Defendants") entered into a settlement agreement with the Plaintiff for $7,000,000.00.[5] Settlement Agreement, ECF No. 21-1. The settlement agreement contained a general release provision that provided, in part, that the Plaintiff releases the Settling Defendants from "any and all past, present or future claims." *Id.* at 3-4. The settlement agreement also provided a "Dismissal Order" stating that the Plaintiff will dismiss, with prejudice and without an award of costs or attorney's fees, the Settling Defendants from the litigation. *Id.* at 4. The settlement agreement explicitly stated that "it is the clear intent of [the Plaintiff] to proceed with his claim against [Chubb]." *Id.* at 1.

---

[3] On October 28, 2022, the Plaintiff filed a complaint against CTSI, Mr. Oates, and Century. Compl., ECF No. 1. On February 28, 2023, the parties stipulated to allow the Plaintiff to file a first amended complaint in order to add Chubb as a Defendant. Stipulation, ECF No. 13 and Am. Compl., ECF No. 15.

[4] Guam's direct action statute, 22 GUAM CODE ANN. § 18305, provides that

> [o]n any policy of liability insurance the injured person or his heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in Guam, and whether or not such policy contains a provision forbidding such direct action, provided that the cause of action arose in Guam. Such action may be brought against the insurer alone, or against both the insured and insurer.

[5] The Plaintiff settled for the maximum allowed under the "Motor Car" policy amounting to $5,000,000.00 and $2,000,000.00, which is half of the $4,000,000.00 maximum allowed under the "General Liability" policy. Decl. at 2, ECF No. 45. Chubb was not a party to the settlement. Am. Compl. at 3, ECF No. 15.

On September 5, 2023, the Plaintiff moved to dismiss the Settling Defendants from the case with prejudice. Mot. at 2-3, ECF No. 20. On September 26, 2023, Chubb filed a response to the motion and argued that it should also be dismissed from the case. Resp., ECF No. 24. On October 3, 2023, the Plaintiff filed a reply to Chubb's response and argued that he is claiming an additional $1,000,000.00 from Chubb pursuant to the Third Party Liability Extension provision in the Chubb Policy because the accident involved "road haulage activity." Reply at 8, ECF No. 29.

On October 4, 2023, the court granted the Plaintiff's Motion to Dismiss the Settling Defendants in the case with prejudice. Order, ECF No. 30. As to Chubb's request to be dismissed from the case, the court ordered that Chubb "shall file the appropriate motion to dismiss." Order, ECF No. 30. Instead of filing a motion to dismiss, Chubb subsequently filed a Motion for Summary Judgment on November 7, 2023. Mot., ECF No. 35.

In its Motion for Summary Judgment, Chubb argued the following: (1) the Chubb Policy's Third Party Liability Extension does not provide coverage for the vehicle accident that occurred in this case because the accident did not include damage to or loss of freight; and (2) even if the Third Party Liability Extension provided coverage, the Chubb Policy's excess provision was not triggered because the Plaintiff settled for less than the Two Century Policies by $2,000,000.00. Memo., ECF No. 36.

On December 12, 2023, the Plaintiff filed an Opposition to Chubb's Motion for Summary Judgment. Opp'n., ECF No 44. On January 2, 2024, Chubb filed a Reply Brief in Support of its Motion for Summary Judgment to the Plaintiff's Opposition. Reply, ECF No. 48. Whether the Chubb Policy provides additional coverage to the Plaintiff is the issue before this court.

## II.      Jurisdiction

The court has diversity jurisdiction.[6] *See* 28 U.S.C. § 1332. In a case in which the court's diversity jurisdiction is invoked, the court must apply Guam law with respect to matters of substantive law, while applying federal law to procedural matters. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996).

## III.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering the motion, "[t]he court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549-50 (9th Cir. 1994). "The evidence is viewed 'in the light most favorable to the non-moving party.'" *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (quoting *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc)).

The moving party bears the burden of identifying "particular parts of materials in the record" that "demonstrate the absence of a genuine issue of material fact." FED. R. CIV. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must then do similarly, except to demonstrate that a genuine issue of material fact exists. FED. R. CIV. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is granted when the non-moving party fails to offer evidence that might "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

---

[6] The Plaintiff is a citizen of the Federated States of Micronesia and Chubb is a foreign corporation licensed to do business in Guam. *See* Am. Compl. at 2, ECF No. 15; 28 U.S.C. § 1332. The Plaintiff seeks to recover over $75,000.00, which is the proper amount in controversy. *See* Am. Compl. at 7, ECF No. 15; 28 U.S.C. § 1332.

**IV.    Discussion**

The interpretation of an insurance policy is a question of law and, therefore, the court "must make its own determination of the meaning of the relevant contract[, i.e., insurance policy] language." *Nat'l. Union Fire Ins., Co. of Pittsburgh, Pa. v. Guam Hous. & Urb. Renewal Auth.*, 2003 Guam 19, ¶ 13 (Guam Nov. 4, 2003) (holding that, "in determining whether the insurer has a duty to defend, the court must look to the contract, i.e., the insurance policy"). Therefore, interpretation of the terms of an insurance policy is "appropriately resolved on summary judgment." *Id.* (quoting *Brown & Lacounte, LLP v. Westport Ins. Corp.*, 307 F.3d 660, 662 (7th Cir. 2002)).

"In construing what various terms in a contract mean, the task of the court is to discern and give legal effect to the intent of the parties at the time of contracting." *Wasson v. Berg*, 2007 Guam 16, ¶ 10 (Guam Dec. 3, 2007); *see* 18 GUAM CODE ANN. § 87102. The intent of the parties is to be "restricted by the plain meaning of the contract terms" if the language is clear, explicit, and does not "involve an absurdity." *Id.*; *see* 18 GUAM CODE ANN. § 87104. The court gives effect to every part of the contract and uses each clause to help interpret the other. 18 GUAM CODE ANN. § 87107.

Guam courts utilize the "traditional approach" to contract interpretation and analyzes the "four corners of the contract" to determine whether, as a matter of law, an ambiguity exists.[7] *Wasson*, 2007 Guam at ¶ 15. Under this approach, the use of extrinsic evidence is prohibited to "interpret, vary or add to the terms of an unambiguous integrated written instrument." *Id.* (quoting *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 568 (9th Cir.1988)). If the court

---

[7] "By contrast, the modern approach does not require the court to make a threshold finding as a matter of law that some ambiguity exists. Rather, the question of a contract's meaning as a whole is treated as a question of fact for the fact-finder to determine." *Wasson*, 2007 Guam at ¶ 13.

determines that ambiguity exists, it is only then that the court may look to extrinsic evidence to clarify and resolve an ambiguity as a question of fact. *Id.* This court will apply the traditional approach. *See Gasperini*, 518 U.S. at 427.

In this case, the Plaintiff seeks to recover $1,000,000.00 from the Chubb Policy's Third Party Liability Extension. Reply at 8, ECF No. 29. The issues presented in Chubb's Motion for Summary Judgment hinge on the court's interpretation of the Chubb Policy as a matter of law. *See Nat'l Union Fire Ins. Co.*, 2003 Guam 19, ¶ 13. The parties do not present any genuine issues of material fact that remain in dispute after the relevant legal questions are resolved. Opp'n at 2, ECF No. 44; *see also Anderson*, 477 U.S. at 248. For the reasons explained below, the Plaintiff cannot recover under the Third Party Liability Extension because (a) the Chubb Policy does not provide coverage for the vehicle accident in this case; and (b) the Chubb Policy is an excess policy which was not triggered because the Plaintiff and the Settling Defendants settled below the total policy amounts provided by the Two Century Policies.

### A. The Chubb Policy does not provide coverage for the vehicle accident in this case.

The Chubb Policy, in pertinent part, provides coverage to CTSI for "Freight Liability." Ex. C at 98-99, ECF No. 37. The "Freight Liability" section states that:

> **Chubb** will indemnify the **Insured** for all sums for which the **Insured** becomes legally liable to pay as **Compensation** for **Freight Property Damage**, occurring within the **Policy Territory** during the **Period of Insurance** as a result of an **Occurrence** in connection with the **Insured Services**.

Ex. C at 98, ECF No. 37 (emphasis in original).

The Chubb Policy also provides a Third Party Liability Extension. *Id.* at 117. This extension provides coverage to third parties for physical loss or damage to the property of a third

party and death of, or "Bodily Injury" to a third party. Ex. C at 117, ECF No. 37. This extension provides that it will cover up to $1,000,000.00 for each "Occurrence." *Id.* When an insured's services, CTSI's services, are in Guam or Saipan, Item 18(3) of the Policy Schedule provides that the insured, CTSI, is "subject to Sub-Limit USD $250,000.00 each claim and deductible USD10,000[.00] each claim." *Id.* at 93.

The extension explicitly provides coverage when there is an "Occurrence." *Id.* The Chubb Policy defines "Occurrence" as an event that includes "continuous or repeated exposure to substantially the same general conditions" which culminate in "Freight Property Damage" that the insured neither expected nor intended. *Id.* at 110. The Chubb Policy further provides that "Freight Property Damage" means "(a) [p]hysical damage to, destruction of or loss of Freight[, meaning any goods belonging to a third party that CTSI is responsible for,] including the loss of use thereof; and (b) [f]inancial loss incurred by the owner of the Freight caused solely by the physical damage to, destruction of, or loss of use of Freight." *Id.* at 108.

Significantly, the facts in this case demonstrate that there was no "Occurrence" in this vehicle accident because there was no "Freight Property Damage." Therefore, the Third Party Liability Extension does not provide coverage in this vehicle accident. *Id.* at 117. The only loss in the vehicle accident was injury to the Plaintiff's person. *See* Def.'s Concise Statement of Undisputed Material Facts at 1, ECF No. 38. Moreover, neither party disputes the fact that there was "no loss of or damage to freight in the subject motor vehicle accident." *Id.*; Pl.'s Concise Statement of Material Facts at 2, ECF No. 46.

Despite the fact that no loss or damage to freight occurred, the Plaintiff proceeds to make the following three arguments. First, he points out that the term "Freight Property Damage" is not included under the Third Party Liability Extension and, therefore, it is not a requirement for

1  the extension to provide coverage for bodily injury. Opp'n at 15, ECF No. 44; Ex C. at 117, ECF

2  No. 37.

3        This argument is without merit. The Third Party Liability Extension explicitly states that

4  it provides coverage for "each Occurrence" and, by its definition under the Chubb Policy, an

5  "Occurrence" is a particular event that results in "Freight Property Damage." Ex. C at 110, ECF

6  No. 37. Using the definition of "Freight" provided by the Chubb Policy, damage to "Freight"

7  property means damage to "[**g**]**oods** of every description." *Id.* at 108 (emphasis added). The

8  Plaintiff is ignoring the term "Occurrence," which is essential for the Third Party Liability

9  Extension coverage to attach. *Id.* at 108, 110, 117. Without "physical damage to, destruction of

10  or loss of **Freight** including the loss of use thereof," there is no "Occurrence." *Id.* at 108, 110

11  (emphasis in original). Without an "Occurrence," the Third Party Liability Extension does not

12  provide additional coverage to the Plaintiff. *Id.* at 110, 117.

13        Second, the Plaintiff focuses on the fourth special exclusion to the Third Party Liability

14  Extension. Opp'n at 18, ECF No. 44. This special exclusion provides that no coverage "shall be

15  available under" the Third Party Liability Extension for "Legal Liability for loss of or damage to

16  **Cargo**." Ex. C at 117, ECF No. 37 (emphasis in original). He asserts that the term "Cargo" is

17  interchangeable with the term "Freight" or the "notion of 'goods.'"[8] Opp'n at 18, ECF No. 44.

18  He acknowledges that the literal interpretation of the Third Party Liability Extension provides

19  that bodily injury is only covered "when accompanied by damage to 'goods,' provided that no

20  damage for 'goods' will be covered." *Id.* However, the Plaintiff argues that this literal

21  interpretation is "absurd." *Id.* Instead, he asserts that the "more reasonable" interpretation of the

22

23  ---
  [8] The court agrees that the term "Cargo" is interchangeable with the terms "Freight" and "goods" and further notes
that Chubb does not dispute this.

24

Third Party Liability Extension is that the loss of "goods," i.e., "Freight" or "Cargo," is not a prerequisite to coverage for bodily injury under the extension due to the fourth special exclusion language. *Id.* The Plaintiff argues that because loss of "goods" is not a prerequisite it is surplusage and, therefore, is not a necessary element to a coverage to a third party for bodily injury. *Id.* at 18-19.

The Plaintiff's argument that the loss of "goods" is surplusage is incorrect. As noted above, the Third Party Liability Extension requires an "Occurrence" and an "Occurrence" requires "Freight Property Damage," i.e., loss of "goods," "Freight," or "Cargo." Ex. C at 117, ECF No. 37. Furthermore, it is clear and explicit that an "Occurrence" is a two-fold requirement of Third Party Liability Extension. *Id.* First, the extension provides that Chubb will pay up to a certain amount if there is an "Occurrence" and, second, that "Occurrence" must "**result[] in**" the physical loss or damage to a third party's property; or the death of, or **bodily injury to, a third party**. *Id.* (emphasis added). In other words, if the "Occurrence" does not result in the bodily injury to a third party then coverage does not attach. *Id.* Just because the fourth special exclusion precludes coverage of loss of "Cargo" does not automatically eliminate the two-fold requirement that there must be an "Occurrence" and that the "Occurrence" must result in the specified events under the extension. *Id.* The court also emphasizes that the purpose of the extension is not to provide coverage for damage to or loss of "Cargo," but to provide coverage to third parties in accidents where "Freight Property Damage" occurs and the "Freight Property Damage" results in an injury to a third party, as alleged in the case before the court. *Id.* Instead, loss of "Cargo" is covered by Section A, "Freight Liability," of the Chubb Policy. *Id.* at 98. Accordingly, the court finds that loss of "goods" is indeed a requirement for coverage to attach under the extension.

1    Third, the Plaintiff's last arguments also fails. He argues that the $250,000.00 sub-limit

2   for each claim provided under Item 18(3) of the Policy Schedule does not apply to the Third

3   Party Liability Extension because the extension coverage amount is $1,000,000.00 for each

4   claim and the $250,000.00 cap provision is not specifically contained in the Third Party Liability

5   Extension section. Opp'n. at 19, ECF No. 37. Chubb, however, argues that the $250,000.00 limit

6   replaced the $1,000,000.00 limit for Guam and Saipan. Reply at 5, ECF No. 48 (citing 6 GUAM

7   CODE ANN. § 2514 and 18 GUAM CODE ANN. § 87107). The court agrees with Chubb.

8    Guam law requires that the Chubb Policy "be taken together, so as to give effect to every

9   part, if reasonably practicable, each clause helping to interpret the other." 18 GUAM CODE ANN.

10   § 87107. The language in Item 18(3) unambiguously states that Guam and Saipan are subject to a

11   sub-limit with respect to the extensions provided under the Chubb Policy and Item 18(1)

12   expressly includes the Third Party Liability Extension. Ex. C at 93, ECF No. 37. Taking Items

13   18(1) and 18(3) of the Policy Schedule and the Third Party Liability Extension together, the

14   court finds that the $250,000.00 sub-limit provided in Item 18(3) explicitly applies to the Third

15   Party Liability Extension when CTSI's services are in Guam and Saipan. 18 GUAM CODE ANN.

16   § 87107; Ex. C at 93, ECF No. 37.

17    The Plaintiff further argues that the carve out for the Philippines is specifically contained

18   in the Third Party Liability Extension section and the parties should have included the Guam and

19   Saipan carve out in the same section. Opp'n at 20, ECF No. 44. The court disagrees. First, the

20   mention of the Philippines under the extension does not provide a different coverage amount, it

21   is still $1,000,000.00. Ex. C at 117, ECF No. 37. This carve out simply provides a different

22   deductible amount for "Claims" from the Philippines. *Id.* However, even if the extension

23   provided a carve out for a different amount of coverage for "Claims" from the Philippines, this

24

would not change the fact that the sub-limit for Guam and Saipan noted in the Policy Schedule still applies to the extension. *Id.* at 93. The court finds the Plaintiff's argument to be without merit because the provisions in the Policy Schedule, Items 18(1) and 18(3), and the Third Party Liability extension apply to the Chubb Policy as a whole. 18 GUAM CODE ANN. § 87107.

In sum, the court finds that the Third Party Liability Extension does not provide coverage because there was no "Occurrence" and even assuming there was coverage, it would be limited to the $250,000.00 Sub-Limit in Item 18(3) of the Policy Schedule.

### B. The Chubb Policy is an excess policy, and the excess policy has not been triggered.

Assuming *arguendo* that the Chubb Policy provides coverage for the vehicle accident in this case, the Chubb Policy does not apply because (1) it is an excess policy, and (2) the excess policy has not been triggered.

### i.    The Chubb Policy is an excess policy.

"An 'excess' . . . insurance policy serves a different purpose than a primary policy. A 'true' excess policy protects the insured 'in the event of a catastrophic loss in which liability exceeds the available primary coverage.'" *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1093 (9th Cir. 2001) (quoting 16 *Couch on Insurance* § 220:32 (3d ed.1995)). The court finds that Section 10.9(a) of the Chubb Policy, titled "Other Insurance," and Item 18(4)(b) of the Policy Schedule, clearly demonstrate that the Chubb Policy is an excess policy for the following reasons. Ex. C. at 93, 114, ECF No. 37.

First, the "Other Insurance" provision, in Section 10.9(a) of the Chubb Policy provides that

> [i]f any **Freight Property Damage** or **Loss** or all other amounts payable
> by Chubb under this **Policy** is insured under any other policy (whether

1
2
3
4

> such other insurance is stated to be primary, contributory, excess,
> contingent or otherwise) entered into by or effected on behalf of the
> [CTSI], or under which the [CTSI] is a beneficiary, whether prior or
> current, then this **Policy**, subject to its terms, exclusions and conditions,
> will only cover **Freight Property Damage** or **Loss** or other amounts
> payable by **Chubb** under this **Policy** to the extent that the amount is in
> excess of the amount of such other insurance.

5
6
7
8
9
10
11
12
13
14

*Id.* at 114 (emphasis in original). The court finds that Section 10.9(a) is unambiguous. *See Wasson*, 2007 Guam at ¶ 16 (holding that court's look to the "four corners of the contract" to determine whether an ambiguity exists); 18 GUAM CODE ANN. § 87105 (The language of a contract, i.e., an insurance policy, "govern[s] its interpretation, if the language is clear and explicit, and does not involve absurdity."). A plain reading demonstrates that the Chubb Policy is an excess policy because CTSI is covered by "other insurance," i.e., the Two Century Policies, that provides coverage for "Freight Property Damage or Loss or all other amounts payable by Chubb." Ex. C at 114, ECF No. 37. Therefore, the Chubb Policy is only required to provide coverage to the extent that the amount due to CTSI is in excess of the total policy amount of $9,000,000.00 provided by the Two Century Policies. *Id.*

15
16
17
18
19
20

The Plaintiff argues that the Chubb Policy is not an excess policy because it "does not include the language typical of an 'excess' insurance policy" and that it "does not say it is 'excess' to some other coverage." Opp'n at 22, ECF No. 44. The court finds this argument to be frivolous. An explicit reading of the "Other Insurance" provision demonstrates that the term "excess" is included in the provision and provides that Chubb will only cover the insured, CTSI, if it is "in excess of the amount of such other insurance." Ex. C at 114, ECF No. 37.

21
22

Second, Item 18(4)(b) states that for the Third Party Liability Extension to apply, CTSI is subject to the following warranty:

23
24

all road haulage activity performed by the insured[, CTSI,] covered by a separate comprehensive motor insurance policy which includes liability to third parties at a minimum limit of USD2,000,000 each claim. **Such insurance to be the policy of first recourse.**

*Id.* at 93 (emphasis added). Item 18(4)(b) unambiguously provides that the Third Party Liability Extension will be used in excess of the separate motor insurance policy because of its plain language that the separate motor insurance policy is "to be the policy of first recourse." *Id.* In other words, the separate motor insurance policy is to be the first layer of coverage for CTSI, also known as a primary policy, and the Third Party Liability Extension is to be an excess or second layer of coverage, also known as an excess policy. *See Nat'l Football League v. Fireman's Fund Ins. Co.*, 157 Cal. Rptr. 3d 318, 323 (Cal. App. 2d Dist. 2013) (holding that the plaintiff's insurance policies fell into two types of coverage categories, (1) "the first-recourse 'primary' [coverage,]" and (2) excess policy coverage).[9]

In sum, Item 18(4)(b) and Section 10.9(a), the "Other Insurance" general condition, clearly demonstrate that the Chubb Policy is an excess policy.

### ii. The Chubb Policy was not triggered.

"A primary insurance policy is immediately 'collectible' as long as the insurer is solvent." *Hallmark Specialty Ins. Co. v. Cont'l Ins. Co.*, No. 20-17314, 2022 WL 382037, at *2 (9th Cir. Feb. 8, 2022) (quoting *Hellman v. Great Am. Ins. Co.*, 136 Cal. Rptr. 24, 27 (Ct. App. 1977)). "An excess insurance policy, on the other hand, becomes collectible only after the underlying coverage has been exhausted." *Id.* (citing *Hellman*, 136 Cal. Rptr. at 27-28). The question that the court must answer is whether the Chubb Policy is triggered by the exhaustion of

---

[9] "California law may be illuminating, as 'Guam's insurance statutes were adopted from California.'" *Guam Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, No. CV 11-00014, 2013 WL 5068873, at *4 (D. Guam Sept. 13, 2013), *aff'd*, 787 F.3d 1001 (9th Cir. 2015) (quoting *Fajardo ex rel. Fajardo v. Liberty House Guam*, 2000 Guam 4, ¶ 15 (Guam Jan. 19, 2000)).

the $9,000,000.00 total policy amount provided by the Two Century Policies or if it is triggered by exhaustion of the settlement amount of $7,000,000.00, which is less than the total policy amount provided by the Two Century Policies. The court finds that Section 10.9(a), the "Other Insurance" provision, unambiguously requires the total policy amount be exhausted before the excess provision is triggered for the following reasons.

First, the court is guided by the plain language of the insurance policy. *Nat'l Union Fire Ins., Co.*, 2003 Guam at ¶ 21. Looking at the language of the "Other Insurance" provision of the Chubb Policy, the court finds no ambiguity. *See Guerrero v. Guerrero*, 2014 Guam 6, ¶ 16 (Guam Mar. 24, 2014). A reasonable understanding of the term "in excess of the amount of such other insurance" clearly means that the Chubb amount will be in excess of the amount of total coverage provided by the other insurance policies (i.e., the Two Century Policies), which is $9,000,000.00. Ex. A at 5-46, Ex. B at 49-88; Ex. C at 114, ECF No. 37. If the "Other Insurance" provision intended for the Chubb Policy to kick in at a below settlement amount rather than the "amount of such other insurance," the policy could have added language allowing for alternative methods of exhaustion, but it did not. *Id.* In the absence of ambiguous language providing that "amount of such other insurance" means anything but the actual amount provided by "such other insurance," the court finds that the Chubb Policy was not triggered because the settlement amount did not exceed the $9,000,000.00 total policy amount provided by the Two Century Policies. *Id.*; *Wasson*, 2007 Guam at ¶ 16.

Second, an excess insurance policy that is excess to all other underlying policies "requires all primary insurance to be exhausted before" the excess insurer's obligation is triggered. *Travelers Prop. Cas. Co. of Am. v. Safeco Ins. Co. of Ill.*, No. CV 08-1261 GW (SSX), 2009 WL 10671410, at *9 (C.D. Cal. Sept. 22, 2009), *aff'd*, 468 F. App'x 689 (9th Cir. 2012)

1  (quoting *Padilla Constr. Co., Inc. v. Transp. Ins. Co.*, 150 Cal. App. 4th 984, 986 (2007)). This is

2  also known as horizontal exhaustion. *Id.* The court in *Travelers Property Casualty Company of*

3  *America* explained that California courts follow two rules of exhaustion, horizontal and vertical,

4  when it comes to determining whether an excess policy has been triggered. *Id.* Horizontal

5  exhaustion applies as noted above and vertical exhaustion applies when an excess policy states

6  that it will provide coverage in excess of a **specific** primary insurance policy and "will cover that

7  claim when that **specific** primary policy is exhausted." *Travelers Cas. & Sur. Co. v. Transcon.*

8  *Ins. Co.*, 19 Cal. Rptr. 3d 272, 279 (Cal. App. 4th Dist. 2004) (emphasis added).

9  Here, the Chubb Policy is clearly subject to horizontal exhaustion because the "Other

10  Insurance" provision provides that the Chubb Policy will kick in when the amount is in excess of

11  "such other insurance." Ex. C at 114, ECF No. 37. Therefore, in order for the Plaintiff to recover

12  from Chubb's Third Party Liability Extension, CTSI would have had to exhaust the total policy

13  amount of $9,000,000.00 provided by the Two Century Policies. *Id.* Consequently, the total

14  policy amount of the Two Century Policies was not exhausted because the parties settled for

15  $7,000,000.00, which is $2,000,000.00 short of what was needed for the Chubb Policy to be

16  triggered. *Id.* Therefore, the excess policy was not triggered.

17  Third, Chubb discusses a Second Circuit decision, *Zeig v. Massachusetts Bonding &*

18  *Insurance Co.*, 23 F.2d 665 (2d. Cir. 1928), that stands for the proposition that "New York law

19  permits an insured to fill the gap left by below-limits settlement with an underlying insurer

20  where the policy leaves the terms 'payment' or 'exhaustion' ambiguous." *Black & Veatch Corp.*

21  *v. Aspen Ins. (Uk) Ltd.*, 378 F. Supp. 3d 975, 1006 (D. Kan. 2019) (quoting *Hopeman Bros., Inc.*

22  *v. Cont'l Cas. Co.*, 307 F. Supp. 3d 433, 472 (E.D. Va. 2018)). Chubb argues that the doctrine

23

24

1 articulated in *Zeig* should not apply to this case. Mot. at 15-17, ECF No. 36. The Plaintiff asserts

2 that the *Zeig* case is not relevant. Opp'n at 25, ECF No. 44.

3 The court finds the interpretation of *Zeig* in *Qualcomm, Inc. v. Certain Underwriters at*

4 *Lloyd's, London*, to be persuasive. 73 Cal. Rptr. 3d 770, 782 (Cal. App. 4th Dist. 2008). The

5 court in *Qualcomm* rejected *Zeig*, in part, because the case appeared to be placing policy

6 considerations over the plain meaning of the excess policy, which is contrary to the traditional

7 contract interpretation approach California courts use to interpret insurance policies. *Id.* at 782.

8 The court in *Qualcomm* ultimately held that a settlement below the policy amount does not

9 satisfy the exhaustion requirement of an excess policy where the policy language unambiguously

10 requires the payment of the full amount of the primary policy. *Id.* at 779. In *Zeig*, the court's

11 analysis partly turned on avoiding burdening the insured. 23 F.2d at 666. The court held that

12 requiring the insured to collect the total primary insurance policy amount would be burdensome

13 to the insured because, in most cases, it would "involve delay, promote litigation, and prevent an

14 adjustment of disputes which is both convenient and commendable." *Id.* Like in *Qualcomm*, this

15 court is also governed by the four corners of the insurance policy and, when its terms are

16 unambiguous, the interpretation of the insurance policy is limited to its words and their plain

17 meaning. *See* 18 GUAM CODE ANN. § 87104. Here, the court finds the excess policy to be

18 unambiguous. In sum, the court finds that the excess policy was not triggered.[10]

19

_____

20 [10] The Plaintiff argues that he did exhaust the Two Century Policies at their total policy amount because during the settlement discussions the total coverage amount was reduced to $7,000,000.00. Opp'n at 6, ECF No. 44. The

21 Plaintiff explains that the amount was reduced from $9,000,000.00 to $7,000,000.00 because the Plaintiff's life span is precarious, and under 19 GUAM CODE ANN. § 31104, the Plaintiff's death would minimize the amount he could

22 recover. *Id.* The court finds this argument unpersuasive. The court's interpretation of the insurance policy is guided by the four corners of the policy and not the settlement negotiations. *Wasson*, 2007 Guam at ¶ 15 (holding that Guam courts look to the "four corners of the contract"). A plain reading demonstrates that the amount provided

23 under the Two Century Policies was a total of $9,000,000.00 and not $7,000,000.00. Ex. A at 5-46, Ex. B at 49-88, Ex. C at 114, ECF No. 37.

24

### V.      Conclusion

The court finds that Chubb met its burden under Federal Rule of Civil Procedure 56(a) by demonstrating that no genuine issue of material fact exists, and the Plaintiff failed to meet his burden of demonstrating the existence of a genuine issue of a material fact that would affect the outcome of his suit under the court's interpretation of the Chubb Policy.

The court hereby **GRANTS** Chubb's Motion for Summary Judgment with prejudice.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Sep 30, 2024